# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN TOWLE, on behalf of himself and all other aggrieved non-exempt employees,<br><br>Plaintiff,<br><br>vs.<br><br>CUMMINS PACIFIC, LLC, et al.,<br><br>Defendants. | CASE NO. 18cv83-LAB (JLB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [Dkt. 38]** |

Plaintiff Juan Towle sued Defendant Cummins Pacific, LLC ("CP") on behalf of himself and a class of similarly situated employees, alleging that it maintained a meal and rest break policy that was facially unlawful under California law. Towle now moves for class certification. For the reasons below, the Court finds that the certification requirements in Rule 23 are not satisfied, and therefore **DENIES** Towle's motion.

## I. BACKGROUND

Defendant Cummins Pacific, LLC ("CP") sells and services commercial and industrial engines throughout California. Complaint, Dkt. 1-2 at ¶15. Plaintiff Juan Towle was a Rental Technician employed by CP from January 2000 until his termination in November 2015. *Id.* Towle was one of approximately 614 individuals employed by CP in California. Lloyd Decl., Dkt. 46-10 at ¶4. CP's employees hold a wide range of positions, from office administrators, to warehouse personnel, to equipment technicians.

1  *Id.* Of CP's 614 employees, approximately 185 are unionized employees, and the remainder are not unionized. *Id.* Towle was not unionized. Dkt. 1-2 at ¶17.

Prior to his termination, Towle worked in CP's El Cajon Sales and Service Center as a PowerGen Rental Technician. Dkt. 46-10 at ¶6. This was a specialized role that he performed mostly in the field, and mostly autonomously. He was tasked with, among other things, providing service to rental customers and performing repairs and preventative maintenance. *Id* at ¶8. In 2014, CP moved the power generator rental business from El Cajon to its Bloomington branch. *Id.* at ¶34. Towle remained in El Cajon and continued to perform the same duties, but he reported to supervisors in Bloomington. *Id.* at ¶36-37. Shortly thereafter, Towle was injured on the job and was placed on light duty in a position CP created for him. *Id.* at ¶9. He remained in this position with a modified schedule until his termination in November 2015. *Id.*

In 2017, Towle brought this suit in San Diego Superior Court on behalf of himself and a class of fellow employees. CP removed the case to this Court, and Towle has now moved for class certification. The case centers on whether CP violated California law by providing insufficient meal and rest breaks to employees like Towle. CP's employee handbook, which applied to all non-exempt employees, provided:

> Employees are allowed a 15-minute break every four hours. These breaks will be paid. In addition, all employees who work at least five hours in a day are entitled to take at least a 30-minute meal break. Meal breaks are generally unpaid and should be taken prior to the sixth hour of work. However, employees who are required to work or remain at their stations during the meal break will be paid for that time. Unused breaks or meal periods cannot be used for leaving early. The supervisor of each shift is responsible for scheduling employees' meal and rest breaks....

Belong Decl., Ex. A, Dkt. 38-5 at 2-3. Towle argues that this policy is facially unlawful because, among other things, California law requires that employee meal breaks be taken prior to the *fifth* hour of work (not the sixth hour of work), and rest breaks be taken every "four hours *or major fraction thereof*" (not simply every four hours). Mot. for Class Cert.,

Dkt. 38 at 14, 17-18. He also argues CP violated the meal and rest break requirements in practice as well as on paper. Specifically, he submits an expert report from Dr. Robert Fountain, who analyzed time cards from a sample of 55 class members and found a pattern of meal and rest break violations. *See* Fountain Decl., Dkt. 38-19.

For its part, CP does not dispute that this policy appeared in the handbook,[1] but says that the handbook was intended only to "highlight and summarize [CP's] policies and practices" and that supervisors were responsible for scheduling meal and rest breaks. *See* Dkt. 46-38 at 11 (union employees), Dkt. 46-39 at 11 (non-union employees). To that end, CP notes that each of their twelve offices had widely differing practices regarding meal and rest breaks. This was further complicated by the fact that some of the offices were governed by union collective-bargaining agreements that imposed other unique requirements on those offices. *See* Dkt. 46-10 at ¶5. CP submitted declarations from approximately 50 employees—nearly one-tenth of the entire putative class—describing the various break policies in each of their offices. See Dkts. 46-51 – 46-110. CP has summarized these declarations in its Opposition, and a few examples give a sense of the wide variety of policies implemented:

- **Sacramento**: In Sacramento, managers instruct technicians to take their meal periods by noon. Field Techs are unsupervised. They have discretion in timing their meal periods. The rest of the employees must take their meal periods before the beginning of their sixth hour of work, and the meal periods should be staggered to allow for coverage. The Parts department employees stagger their meal periods with groups of employees taking breaks in 30-minute blocks until all lunches are completed by 12:30 p.m. or 1:00 p.m. Warehouse employees also stagger their lunches to begin between 11:30 a.m. and 1:00 p.m. The office manager takes her meal period at noon every day, and the Service Writer usually goes to lunch around 1:00 p.m. or 1:30 p.m. Overall, Sacramento employees have the discretion to take their meal periods when they choose.

- **El Cajon:** In El Cajon, when working in the Shop, Techs' meal periods are scheduled to be taken from 12:30 p.m. to 1:00 p.m.; however, fluctuations occur based upon customer needs. Sometimes Techs take meal periods

---

[1] This handbook was amended in 2016 to come into stricter conformance with California guidelines. Belong Decl., Ex. E, Dkt. 38-9.

- 3 -

earlier or later at their discretion.  When working in the field, Techs take their meal periods at their discretion, but are expected to take it before the end of the fifth hour of work.  Field Techs are allowed to tell customers they need to take their meal periods when on a jobsite in order to do so.

- **Fresno:** In Fresno, some employees' meal periods are scheduled and some are not.  Nonetheless, employees usually take their meal periods between 12:00 p.m. and 12:30 p.m.  The non-Tech employees stagger their lunches with the earliest beginning at 11:30 a.m. and ending at 12:30 p.m. and the latest taking lunch from 1:00 p.m. to 2:00 p.m.  Techs typically take their lunches from 12:00 p.m. to 12:30 p.m. on Monday through Thursday, and from 12:00 p.m. to 1:00 p.m. on Fridays.  Although these employees generally take their meal periods in these schedules, they have the discretion to take their meal periods when they deem appropriate to ensure coverage.  When Techs are working in the field, they are generally unsupervised, and expected to take timely, 30-minute meal periods when they deem appropriate.

Opp. to Class Cert., Dkt. 46 at 13-14, 16-18 (internal citations omitted).  The excerpts above relate only to meal breaks, but CP submits similar summaries of the variances in rest break policies between offices as well.

CP's expert, Robert Crandall, also takes issue with the findings of Towle's expert, Dr. Fountain.  For example, based on his analysis, Crandall found that a meal break of at least 30 minutes occurred during 94.2% of meal-eligible shifts.  Crandal Decl., Dkt. 46-37 at ¶13.  As to the remaining shifts, Crandall suggests a variety of reasons an employee might not take a break during a given meal-eligible shift other than being precluded from taking a break by CP.  *Id.* at ¶21-29.

**II. Legal Standard**

    **a. Class Certification Generally**

"A party seeking class certification must satisfy the requirements of Fed. R. Civ. P. 23(a) and the requirements of at least one of the categories under Rule 23(b)."  *Wang v. Chinese Daily News*, 737 F.3d 538, 542 (9th Cir. 2013).

The four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common

> to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These are commonly referred to as the numerosity, commonality, typicality, and adequacy requirements. The Court must perform "a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 345 (2011). Towle seeks certification under Rule 23(b)(3), which applies where common questions predominate over individualized ones and a class action is the superior mechanism for dispute resolution.

"In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotation marks and citations omitted). Therefore, the Court considers the merits of the underlying claims to the extent that the merits overlap with the Rule 23(a) analysis, but does not determine whether Towle actually could prevail. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011).

Although the Court must generally accept the substantive allegations made in the complaint as true, it must also consider the nature and range of proof necessary to establish those allegations. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 585 (S.D. Cal. 2010). "In addition, the court may consider supplemental evidentiary submissions of the parties." *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010). "Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (citation and brackets omitted).

### b. Rule 23(a)

Commonality requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "What matters to class certification is not the raising of common questions . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted). It is construed permissively, and indeed less rigorously than the predominance requirement of Rule 23(b)(3). "All questions of fact and law need not be common to satisfy the rule." *Id.* at 2562. One "significant question of law or fact" common to the class may be sufficient to warrant certification. *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

The typicality inquiry under Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The representative claims don't need to be "substantially identical" to those of absent class members, just "reasonably coextensive." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." This factor requires that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and that Plaintiffs are represented by qualified and competent counsel who will vigorously prosecute the action on the class's behalf. *Hanlon*, 150 F.3d at 1020.

### c. Rule 23(b)

In addition to establishing commonality, Towle must still prove that common questions of law or fact predominate over questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a

single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted).

Superiority requires consideration of four factors. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). They are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). When analyzing these factors, the Court must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (internal quotations and citations omitted).

III. **PRELIMINARY MATTERS**

   a. **Evidentiary Objections**

Both Towle and CP make evidentiary objections. CP objects to various portions of the Juan Towle, Tyler Belong, and Chassen Palmer declarations that Towle submitted, while Towle objects to essentially every declaration CP submitted. *See* Dkt. 46-2 (CP's Objections), 53-4 – 53-6 (Towle's Objections). Towle also moves to strike the declarations of Andrew Alcantar and Suzanne Arabian on the basis that CP failed to produce these individuals for deposition. Dkt. 53-7.

As the Ninth Circuit has recognized, though, a motion to certify a class is a preliminary procedure, and courts don't require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975). "[E]vidence presented in support of class certification need not be admissible at trial." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n. 5

(N.D.Cal.2010). The parties' various objections and motions to strike are overruled. In any event, the Court does not rely heavily on any given piece of evidence in reaching its conclusion, so consideration of this evidence doesn't change the outcome.

   b. **Judicial Notice**

Towle requests that the Court take judicial notice of various trial court documents from *Medlock v. Taco Bell*, 07-cv-1314 (E.D. Cal.) and *Hohnbaum v. Brinker Rest. Corp.*, GIC834348 (San Diego Sup. Ct. 2013) in support of his motion for class certification. Dkt. 38-3. Towle's request is **GRANTED** and the Court will take judicial notice of those documents.

IV. **DISCUSSION**

Towle seeks to certify the following class and subclasses, defined as:

- **Unlawful Meal Period Policy Subclass**: All of Defendant's non-exempt California employees who were subject to Defendant's Meal and Rest Breaks policy and who were not relieved of all duties for a first meal period by the end of the fifth hour of work and/or a second meal period by the end of the tenth hour of work between December 4, 2013 and May 31, 2016.
- **Unlawful Meal Period Premium Pay Practice Subclass**: All of Defendant's non-exempt California employees who were not relieved of all duties for a first meal period by the end of the fifth hour of work and/or a second meal period by the end of the tenth hour of work, and who were not compensated with one hour of pay for all such instances between December 4, 2013 and the date of judgment.
- **Unlawful Rest Period Policy Subclass**: All of Defendant's non-exempt California employees who were subject to Defendant's Meal and Rest Breaks policy and who did not receive a first, paid 10-minute rest period during work shifts of 3.5 but less than 4 hours, a second rest period during shifts greater than 6 hours but less than 8 hours, or a third rest period during shifts greater than 10 hours but less than 12 hours, any time between December 4, 2013 and May 31, 2016.
- **Unlawful Rest Period Premium Pay Practice Subclass**: All of Defendant's non-exempt California employees who were not compensated with one hour of pay for all instances where they did not receive a first, paid 10 minute rest period during work shifts of 3.5 but less than 4 hours, a second rest period

during shifts greater than 6 hours but less than 8 hours, or a third rest period during shifts greater than 10 hours but less than 12 hours, any time between December 4, 2013 and the date of judgment.
- **Unlawful Derivative Waiting Time Penalty Subclass**: All of Defendant's former non-exempt California employees who were not provided timely payments of all final wages as required by the California Labor Code upon separation of employment during any time between December 4, 2013 and the date of judgment.

Dkt. 38-1.

CP's opposition focuses primarily on what it sees as Towle's inability to prove commonality (and the related requirement of predominance). However, CP also argues that even if commonality were satisfied, Towle is a uniquely ill-suited class representative and that typicality is therefore also lacking. The Court will address each requirement of Rule 23 in turn, with a focus on commonality and typicality.

### a. **Numerosity, Adequacy, Superiority**

The parties agree that there are approximately 600 putative class members, and Towle argues that this meets the requirements of numerosity. CP does not contest this point. The Court finds that the putative class meets the numerosity requirement.

Adequacy is similarly met here. Although it is closely related to typicality, discussed in more detail below, adequacy focuses more on the qualifications of counsel and whether they will fairly represent the class. Here, Plaintiff's counsel represent that they have significant expertise and experience in the area of wage-and-hour class actions. *See generally* Belong Decl., Dkt. 38-4. CP does not dispute this, and the Court finds that adequacy is satisfied.

Likewise with superiority. CP does not contest superiority, and the Court is not aware of any other pending litigation that would render a class action an inferior method for adjudicating Plaintiffs' claims. The Court finds superiority is met.

### b. **Commonality and Predominance**

Commonality is the heart of this motion for class certification. Boiled down, Towle argues that CP for years maintained a meal and rest break policy that was facially
- 9 -

unlawful under California law. In Towle's view, the facially unlawful policy standing alone is sufficient to satisfy the requirements of commonality because it applied to all CP employees. CP counters that the policy at issue was contained in a handbook intended only to highlight the company's various policies, and that the break policies of CP's twelve California offices varied significantly. Thus, in CP's view, because the policies differed *in practice*, there are no issues common to the entire class.

As noted above, Towle views CP's written break policy as unlawful because California law requires that employee meal breaks be taken prior to the *fifth* hour of work (not the sixth hour of work, as provided in CP's policy), and rest breaks be taken every "four hours *or major fraction thereof*" (not simply every four hours). In similar circumstances, courts have found that unlawful policies like this can provide a common question that would permit class certification. In *Pena v. Taylor Farms. Pac., Inc.,* 305 F.R.D. 197, 216 (E.D. Cal. 2015), for example, the court found that a similar policy surrounding meal breaks was sufficient to give rise to a common question.

But the critical aspect present in *Pena* and other cases that's not present here is evidence that the defendant violated California law not just on paper, but also in practice and in a consistent way that would permit classwide adjudication. In *Pena*, the employees all worked at a single facility and the court was able to determine that the official policy was applied consistently *in practice*. *See id.* at 205, 216-217. Here, that's not the case. As this Court has noted previously, where "there is no good evidence showing the entire class was subject to the same non-compliant practice, . . . there is . . . no question common to the class. *See Cortes v. Mkt. Connect Grp., Inc.*, 2015 WL 5772857, at *7 (S.D. Cal. 2015). Plaintiff's inability to show here that "the entire class was subject to the same non-compliant practice" dooms his argument for commonality. Defendant has submitted declarations from nearly one-tenth of the entire putative class describing the various break policies implemented in each of CP's twelve offices in California. Without belaboring the point, the implemented practices could not be more different.

Towle submits expert testimony to try to support an argument that CP violated California law in practice as well as on paper. His expert, Dr. Fountain, purported to analyze time cards from a sample of 55 class members and, in doing so, found a variety of meal and rest break violations. For example, Dr. Fountain found that "a Meal Period Event [i.e., a violation] occurred on over one-half . . . of all Relevant Shifts. And, 100% of the Sample Class Members . . . incurred one or more Meal Period Events." *See* Fountain Decl., Dkt. 38-19 at ¶9. But even in this, CP points out significant methodological flaws. Fountain's analysis counts only the number of shifts in which no rest break was taken. It does not account for the differences between offices and positions that might explain why a rest break was not taken on a given day. CP's expert, by contrast, found that meal periods were recorded in 94.2% of shifts and that the variety of positions helps explain why breaks were not recorded in the remaining 5.8% of shifts. *See* Crandal Decl., Dkt. 46-37 at ¶13-16, 21-29. The Court cannot conclude from this evidence that there was a common pattern of violations in practice. The Court, of course, does not dispute that CP may (or may not) have violated California's rest break requirements. That's not the question before the Court. The question before the Court is whether it did so in a way that is common to the class and would permit litigation on a class-wide basis. The Court cannot conclude that it did.

Plaintiff also cannot show commonality by referencing CP's alleged practice of failing to pay wage premiums in violation of California law. As the Ninth Circuit has explained, "[a] common practice of not paying wage premiums is not sufficient to show commonality for claims under these statutes." *Coleman v. Jenny Craig, Inc.*, 649 F. App'x 387, 388 (9th Cir. 2016). Failure to pay a wage premium is not a freestanding violation; it is the *remedy* when an employer forces its employees to miss breaks. *Id.* Thus, in order for CP's failure to pay wage premiums to count as a common question, Towle must

/ / /

/ / /

/ / /

"show a common practice of forcing employees to take short or late meal [or rest] breaks." *Id.* For the reasons already stated, he cannot do so.[2]

Finally, permitting certification in a situation like this would run afoul of the policy rationales underlying class certification. Not only do the twelve offices each have differing break policies, many of the offices have both union and non-union employees, each of which are governed by other distinct rules. As the Supreme Court has noted, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (2011). In this case, the dissimilarities make it unlikely that there will be common answers. For example, affirmative defenses applicable to employees in one office are likely to be entirely distinct from those applicable to employees in another office—or even from those applicable to other employees in the same office. These types of differences are likely to impede the resolution of otherwise-common issues.

Even if the Court could find commonality, it could not find predominance. "[I]t is not enough simply that common questions of law or fact exist; predominance is a comparative concept that calls for measuring the relative balance of common issues to individual ones." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 483 (C.D. Cal. 2008). Here issues specific to each office would predominate over the class-wide (and company-wide) questions. Predominance is therefore not satisfied.

c. **Typicality**

CP contends that even if commonality were satisfied, Towle is uniquely ill-suited to be the class representative. The Court agrees. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the

---

[2] The Court also declines to find commonality on the basis that failure to pay rest premiums violates California's Unfair Competition Law. As CP points out, the case Plaintiff relies on for that proposition, *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138 (2015), involved a specific theory of unfair competition—restitution for the lost market value of their jobs compared to jobs with other, premium-paying employers—not advanced here.

interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Where a Plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class," certification should be denied. *Id.* Towle worked for CP as a field technician. In this capacity, he functioned mostly autonomously and outside the office, taking breaks when appropriate. Towle's claims would bear little resemblance to, for example, the claims of an administrative assistant in the Sacramento office, whose work schedule and breaks might be more regimented and dictated by her office's management. The Court therefore finds Towle's claims atypical of the class.

None of this is to pick on Towle or to cast doubt on his individual claims. Typicality in this case is tied closely to commonality. While Towle is especially ill-suited to be class representative, it would be difficult, given the wide variety of practices at each of CP's branches, to find *any* representative whose claims are typical of the entire class. But this is further reason the class should not be certified.

V. **CONCLUSION**

For these reasons, the Court **DENIES** Towle's motion for class certification. Dkt. 38. Having resolved that threshold issue, the Court finds it unnecessary to reach other questions, such as whether to approve the class trial plan or whether current counsel should be appointed as lead class counsel.

**IT IS SO ORDERED**.

Dated: November 5, 2018

*Larry A. Burns*
_____
**HONORABLE LARRY ALAN BURNS**
United States District Judge